KLEIN & ASSOCIATES POLITICAL RELATIONS, Klein Investments, Southeast Texas Political Review, and Philip R. Klein, Appellants,

v.

PORT ARTHUR INDEPENDENT SCHOOL DISTRICT, and Willie Mae Elmore, Bobby Feemster, Donald Frank, Gregory Flores, Mattie Lon-dow, and Ray Meador, Individually and as Agents for Port Arthur Independent School District, Melody Thomas, and Wells, Peyton, Hunt & Greenberg, L.L.P., Appellees.

No. 09–01–562 CV.

Court of Appeals of Texas, Beaumont.

Submitted Aug. 22, 2002.

Decided Dec. 19, 2002.

See also 70 S.W.3d 349.

J. Keith Stanley, Buna, for appellant.

Lawrence Louis Germer, Heather A. Montgomery, Germer, Bernsen & Gertz, LLP, Beaumont, Christopher B. Gilbert, Bracewell & Patterson, LLP, Houston, for appellees.

Before WALKER, C.J., BURGESS and GAULTNEY, JJ.

## OPINION

DAVID B. GAULTNEY, Justice.

Philip Klein publishes his commentary on local issues on an internet website entitled the *Southeast Texas Political Review.* Klein's website article in April 2000 labeled that year's prom at Thomas Jefferson High School in Port Arthur, Texas, as "TJ's Prom From Hell" and quoted a source who described it as a "huge gang fight." The Port Arthur Independent School District ("District") sued Klein & Associates Political Relations, Klein Investments, Inc., *Southeast Texas Political Review,* and Philip R. Klein (collectively "Klein") for defamation. This court affirmed a summary judgment in favor of Klein on the District's defamation cause of action. *See Port Arthur Indep. Sch. Dist. v. Klein,* 70 S.W.3d 349, 353 (Tex.App.-Beaumont 2002, no pet.).

Klein filed a countersuit against the District, the members of the school board ("Trustees"), and the District's original attorney and her law firm ("Attorneys"). Klein sued the District and the Attorneys for abuse of process, negligence, intentional infliction, negligent infliction, conspiracy, free speech and free press under the Texas and United States constitutions, violations of 42 U.S.C. § 1983, tortious interference, and official oppression. In addition, he sued the Attorneys for what he calls "attorney misconduct" and the District (through its Trustees) for defamation. Essentially, Klein complained of the District's lawsuit and public statements by the Trustees.

The trial court severed Klein's countersuit from the District's original suit. Klein's claims were not part of the prior appeal but are the subject of this appeal. This appeal is from a summary judgment granted in favor of the District, the Trustees, and the Attorneys on the various causes of action Klein asserted against them. Klein brings ten issues to this court.

## DENIAL OF A CONTINUANCE

Klein first contends the trial court erred in denying his motion for continuance. He essentially presents three arguments as to why the trial court should have granted his continuance motion: (a) Klein requested and was refused depositions of persons with knowledge of relevant facts; (b) appellees hindered discovery by raising attorney-client and work-product privileges during the depositions of attorneys Melody Thomas and Emily Linker; and (c) appellees used as summary judgment evidence certain information earlier claimed to be privileged. Klein argues appellees' conduct during discovery denied him the time necessary to secure information he considers fundamental to his case.

Whether to allow more time for discovery prior to ruling on a motion for summary judgment is within a trial court's discretion. *Tenneco Inc. v. Enterprise Prods. Co.,* 925 S.W.2d 640, 647 (Tex.1996). In ruling on a request for additional time, the trial court may consider a litigant's failure to diligently utilize the rules of procedure for discovery. *See State v. Wood Oil Distrib., Inc.,* 751 S.W.2d 863, 865 (Tex.1988). A reviewing court will not disturb a trial court's denial of a continu-

ance unless the trial court committed a clear abuse of discretion. *BMC Software Belgium, N.V. v. Marchand,* 83 S.W.3d 789, 800 (Tex.2002). An abuse of discretion occurs when the trial court reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. *Id.*

■ The record reflects the following:

The District sued Klein in July 2000.

Klein sued the District, Trustees, and Attorneys in November 2000.

In January 2001, Klein wrote appellees and suggested that a ruling be obtained from the trial court on the issue of privileges to be asserted by attorney Melody Thomas and that shortly after the ruling her deposition should be taken.

On January 23, 2001, the District filed a motion for partial summary judgment. On February 13, 2001, Klein filed a motion to compel discovery. The motion asked the trial court to find that a claim of privilege (which Klein anticipated would be asserted by Attorney appellees) would not apply to the Attorneys' research and investigation on the claims the District had asserted against Klein.

On February 27, 2001, the district court granted a partial summary judgment in favor of the District on some of Klein's causes of action.

The Attorneys filed their summary judgment motion on March 7, 2001.

In a letter dated April 27, 2001, appellees agreed with Klein's January 24, 2001, letter that, because Ms. Thomas would assert the attorney-client privilege, it would be advisable to have the court rule on the privilege issue prior to the deposition.

Although appellees continued to suggest that a prior ruling should be obtained,

Klein apparently decided otherwise. In a letter to appellees Klein's attorney stated, "[T]he motion to compel is my request for relief. No other parties, including PAISD, have any standing to assert my right to relief nor does any other party have any right to a ruling on my motion."

In a letter dated April 27, 2001, Klein indicated he was certain he would want to depose the Trustees.

In May 2001, Klein filed a "Motion for Continuance of Ruling on [the motion to compel] and First Supplement to Motion to Compel."

In May 2001, the trial court granted summary judgment in favor of Klein on the District's defamation suit against Klein.

On July 12, 2001, Klein took the deposition of Ms. Thomas, who, as predicted by Klein and appellees, asserted the attorney-client and work product privileges in response to certain questions.

In July 2001 Klein requested the depositions of Dwight Wagner, assistant principal at Thomas Jefferson High School and Willie Mae Elmore, a school board trustee. Appellees suggested two different weeks during which they would be available for depositions. The record does not contain any more references to the depositions until November 6, 2001, when appellant asked in correspondence that those depositions, along with a second deposition of Ms. Thomas, be conducted on November 30, 2001, after the hearing scheduled on the summary judgment motion.[1]

On October 12, 2001, the District filed its motion for summary judgment, having earlier obtained a partial summary judgment in its favor.

---

1. The hearing did not take place until December 7, 2001.

On November 28, 2001, Klein again filed a motion for continuance and motion to compel.

After conducting the summary judgment hearing on December 7, 2001, the trial court signed orders granting judgment in favor of the District, the Trustees, and the Attorneys. Klein's lawsuit had been on file for over a year.

Klein characterizes appellees' conduct as an adamant refusal to permit discovery of the information he sought. The record does not bear that out. Klein had a year to conduct discovery. Further, the record does not indicate appellees refused to allow him to depose Melody Thomas, Emily Linker, the Trustees, or school personnel. Nothing in the record indicates that, prior to the December 7, 2001 hearing on appellees' motion for summary judgment, Klein obtained a ruling or a hearing on his motions to compel and motions for continuance. When pressed by appellees about obtaining rulings, Klein maintained the motions were his and he was the only one with standing to obtain a ruling on them. Similarly, the record reveals Klein did not effectuate his stated intention of taking the Trustees' depositions. Though Klein indicated he wanted to depose the Trustees, and specifically requested the depositions of assistant principal Dwight Wagner and trustee Willie Mae Elmore, there is nothing in the record to indicate he sent notices scheduling their depositions or responded to appellees' offer to schedule the depositions.

■ The Texas Supreme Court has explained that "[b]ecause the party requesting discovery is in the best position to evaluate its need for information ..., the orderly administration of justice will be better served by placing responsibility for obtaining a hearing on discovery matters on the party requesting discovery." *McKinney v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pennsylvania,* 772 S.W.2d 72, 75 (Tex.1989). Klein did not present the discovery issue to the trial judge until December 7, 2001, the day of the summary judgment hearing. Under the circumstances in this case, the trial court was not required to reschedule the hearing.

Klein also contends the affidavits attached to the District's motion for summary judgment contain information that appellees previously claimed was privileged—statements relating to the intentions of appellees in instituting suit against him, names of persons with knowledge of relevant facts, and contents of conversations between appellees and various persons. The attorneys declined to testify concerning privileged information. But nothing in the affidavits refers to attorney communications, work, or advice—areas potentially privileged from discovery. Klein gives no indication of when and under what circumstances the affiants' information as stated in the affidavits was asserted to be privileged. He did not take the depositions of the Trustees or others who signed the affidavits. The record does not indicate privileges were asserted by the affiants concerning the statements made in their affidavits. Under the circumstances presented, the trial court did not abuse its discretion in denying the continuance.

### KLEIN'S OBJECTIONS TO APPELLEES' SUMMARY JUDGMENT EVIDENCE

■ Klein argues the trial court erred in overruling his objections to the District's summary judgment evidence. He first claims the District cannot use as summary judgment evidence the affidavits of the Trustees, the principal, and the assistant principal of Thomas Jefferson High School because of the appellees' abuse of the discovery process; he argues the doctrine of waiver by offensive use. In de-

scribing the "discovery abuse," Klein says he repeatedly and unsuccessfully attempted to discover the information that appellees later presented in affidavit form in support of their summary judgment motion. As we have discussed above, the record does not reflect appellees abused the discovery process. The trial court did not err in failing to strike the affidavits on this ground.

Klein also maintains the affidavits offered by the District contain hearsay. The Trustees recited in their affidavits that Jimmy Wyble, the principal, Dwight Wagner, assistant principal, parents, teachers, and students informed the Trustees that no fights took place. The Trustees' accounts of what they had been told were not offered solely to prove that no fights occurred, but to show information the Trustees had before them when they decided to approve the filing of a lawsuit against Klein. *See, e.g., Butler v. Hide–A–Way Lake Club, Inc.*, 730 S.W.2d 405, 410–11 (Tex.App.-Eastland 1987, writ ref'd n.r.e.) (Board of Directors' summary judgment affidavits setting forth the reasons for the board members' actions were offered to prove the good faith of the board members, not the truth of the matters asserted, and were not hearsay.). The Trustees' statements as to their own beliefs regarding reports from others about the prom, and the Trustees' reasons for filing the lawsuit against Klein, are not hearsay.

Klein also argues the affidavit of principal Wyble contains conclusory and self-serving statements. *See generally Progressive County Mut. Ins. Co. v. Carway*, 951 S.W.2d 108, 117 (Tex.App.-Houston [14th Dist.] 1997, writ denied). But Wyble attended the prom and could relate what he knew—including his observation that there were no fights or disturbances of any kind. And we disagree with Klein's assertion that the affidavits of Wyble and the

Trustees are not the type of statements that can be readily controverted. Klein could have taken the depositions of witnesses, including the school administrators, the Trustees, or anyone attending the prom. His complaints on appeal concerning the affidavits are overruled.

GOVERNMENTAL IMMUNITY

The District moved for summary judgment based on the doctrine of governmental immunity, or sovereign immunity, from tort liability. Klein contends the District is not protected by governmental immunity; he says the alleged tortious actions do not involve the carrying out of governmental functions. He argues that the District's actions were not legal exercises of authority. He bases his argument on the fact that at the time the trial court rendered summary judgment on the District's immunity defenses, the trial court had already determined that the District's actions were prohibited by the First Amendment to the United States Constitution. For this reason, Klein says the District was not engaged in governmental functions when it sued him and, therefore, the District was not entitled to immunity.

The bar of governmental immunity is a creature of common law and not of any legislative enactment. *Texas A & M Univ.-Kingsville v. Lawson*, 87 S.W.3d 518, 520 (Tex.2002) (sovereign immunity). The doctrine encompasses two principles— immunity from suit and immunity from liability. *Travis County v. Pelzel & Associates, Inc.*, 77 S.W.3d 246, 248 (Tex.2002). The question here is whether the District is immune from liability.

The Texas Education Code authorizes suit by a school district through its trustees. TEX. EDUC.CODE ANN. § 11.151(a) (Vernon 1996). ("The trustees of an independent school district ... in the name of the district may ... sue and be

sued...."). The Trustees, acting for the District, have the exclusive power and duty to govern and oversee the management of the public schools of the District. *See* TEX. EDUC.CODE ANN. § 11.151(b) (Vernon 1996). That the District's suit—which essentially argued for what would have required a change in the law—was ultimately determined to be without merit does not render the filing and maintenance of suit on behalf of the District as something other than a statutorily authorized function.

Governmental immunity protects the District from liability for conduct that might otherwise be actionable as tortious. As a governmental unit, the District is immune from liability for tortious conduct unless the immunity has been waived. *See LeLeaux v. Hamshire–Fannett Indep. Sch. Dist.,* 835 S.W.2d 49, 51 (Tex.1992); *see also Barr v. Bernhard,* 562 S.W.2d 844, 846 (Tex.1978) ("[A]n independent school district is an agency of the state and, while exercising governmental functions, is not answerable for its negligence in a suit sounding in tort."). Klein cites no waiver of immunity. The Texas Tort Claims Act does not waive immunity for the claims asserted here. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.051 (Vernon 1997); *see also Austin Indep. Sch. Dist. v. Gutierrez,* 54 S.W.3d 860, 863 (Tex.App.-Austin 2001, pet. denied). We conclude the District retains governmental immunity from liability.

To the extent Klein asserts claims against the Trustees solely in their official capacities, the claims are in reality against the District. The immunity available to government officials sued solely in their official capacity is the same as that available to the governmental entity. *See Bates v. Dallas Ind. Sch. Dist.,* 952 S.W.2d

543, 551 (Tex.App.-Dallas 1997, writ denied).

## CAUSES OF ACTION AGAINST TRUSTEES IN INDIVIDUAL CAPACITIES

Klein alternatively sued the Trustees in their individual capacities, claiming they were personally liable for defamation, abuse of process, negligence, tortious interference, intentional infliction of emotional distress, and violations of free speech/free press constitutional rights.[2] "Government employees are entitled to official immunity from suit arising from the performance of their (1) discretionary duties in (2) good faith as long as they are (3) acting within the scope of their authority." *City of Lancaster v. Chambers,* 883 S.W.2d 650, 653 (Tex.1994). Klein claims fact issues preclude application of the official immunity defense here.

We need not address the Trustees' official immunity defense from personal liability. Appellees' motions also addressed the merits of each of the claims. For the reasons we explain below, we hold the trial court properly granted summary judgment on the merits of each cause of action.

## DEFAMATION CLAIM

We first consider Klein's defamation cause of action. To maintain a defamation claim, a plaintiff must prove the defendant (1) published a statement, (2) that was defamatory concerning the plaintiff, (3) while acting with either actual malice, (if the plaintiff was a public official or public figure) or negligence (if the plaintiff was a private individual), regarding the truth of the statement. *WFAA–TV, Inc. v. McLemore,* 978 S.W.2d 568, 571, 574 (Tex.1998). A defendant is entitled to summary judgment if the defendant ne-

---

**2.** Although Klein sued the Trustees in their individual capacities on additional causes of action, we consider only those he has presented on appeal.

gates the element of actual malice. *Id.* Klein says he is a limited-purpose public figure; as one, actual malice is an element of his cause of action. *See id.* at 573.

■ In *McLemore*, the Texas Supreme Court explained the element of actual malice as follows:

> Actual malice is a term of art, focusing on the defamation defendant's attitude toward the truth of what it reported. Actual malice is defined as the publication of a statement 'with knowledge that it was false or with reckless disregard of whether it was false or not.' Reckless disregard is also a term of art. To establish constitutional recklessness, a defamation plaintiff must prove that the publisher 'entertained serious doubts as to the truth of his publication.'

*Id.* at 573–74. (citations omitted). In *McLemore* the defendants negated the actual malice element by filing an affidavit detailing the reporter's belief in the truth of the reports. *See id.* at 574. Similarly, the Trustees in this case filed affidavits that evidenced their beliefs the reported fight at the prom did not occur and the Klein report was false. These assertions detail their beliefs in the truth of their allegedly defamatory statements. Klein filed affidavits of his belief that a fight did occur at the prom and that the report he wrote was truthful. But the fact that Klein believed his own report offers no support for a claim that the Trustees' public statements were motivated by actual malice.

Klein also offered an affidavit of Mark Faggard, an attorney, who described a conversation he had with Melody Thomas, one of the attorneys representing the District. According to Faggard, he told Ms. Thomas the District's suit against Klein was meritless; he said she told him she was not sure how long the trial judge would let the case continue. Faggard interpreted her "tone" to mean she knew the case was probably without merit. Faggard acknowledged in his affidavit that he had previously been Klein's attorney in litigation with other members of Thomas's law firm. Even if we impute Thomas's view of the case to the Trustees, Faggard's affidavit does not raise a fact issue as to whether Thomas herself thought the suit had no merit. The affidavit recounts his interpretation of her tone of voice, and his speculation does not raise a fact issue on actual malice.

In this controversy, Klein had a remedy for criticisms of his report through the publication of a rebuttal. The Trustees had a remedy for Klein's criticism through issuances of public statements. They chose to exercise this First Amendment right by responding publicly to Klein's public criticism. No evidence effectively counters the Trustees' affidavits stating their beliefs that the Klein report was false; Klein offered no evidence suggesting that Trustees had any doubt their own statements were true. The Trustees' affidavits negated the element of actual malice. Because the record reflects that the Trustees' public criticisms of Klein were not motivated by actual malice, the trial court properly granted summary judgment on Klein's defamation claims.

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

■ We next consider Klein's intentional infliction of emotional distress cause of action. The elements of intentional infliction are: "(1) the defendant acted intentionally or recklessly; (2) the conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the emotional distress that the plaintiff suffered was severe." *See Brewerton v. Dalrymple*, 997 S.W.2d 212, 215 (Tex.1999) (citing *Twyman v.*

*Twyman*, 855 S.W.2d 619, 621 (Tex.1993)). Klein argues on appeal that the Trustees were aware their public statements were false and there was no legal basis for filing the District's suit.

The question of whether conduct is "extreme and outrageous," sufficient to support an intentional infliction claim, is initially a question of law for the court. *Motsenbocker v. Potts*, 863 S.W.2d 126, 132 (Tex.App.-Dallas 1993, no writ). The Texas Supreme Court has relied on RESTATEMENT (SECOND) OF TORTS § 46(1). *See Brewerton*, 997 S.W.2d at 216. Comment d. to that provision explains that the conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.;* RESTATEMENT (SECOND) OF TORTS § 46 cmt. d (1965). The District, through its Trustees, sought to defend the District's reputation by exercising its ability to sue. *See* TEX. EDUC.CODE ANN. § 11.151(a) (Vernon 1996). In making public statements, the Trustees exercised the right of free speech. Under the Restatement standard, as a matter of law neither the lawsuit nor the public comments of the Trustees constituted extreme and outrageous conduct sufficient to support a cause of action for intentional infliction of emotional distress.

True, the suit filed by the District had no legal merit. *See Port Arthur Indep. Sch. Dist.*, 70 S.W.3d 349. But the act of filing a lawsuit—one which essentially asks for what would be a change in the law—does not go beyond all possible bounds of decency so as to be regarded as atrocious and utterly intolerable in a civilized community. *See generally Brewerton*, 997 S.W.2d at 216 (quoting RESTATEMENT (SECOND) OF TORTS § 46 cmt. d); *see generally Guzman v. Guzman*, 827 S.W.2d 445, 448 (Tex.App.-Corpus Christi 1992), *writ dism'd; improv. granted*, 843 S.W.2d 486 (Tex.1992) (legitimate argument for change in existing law permissible). Essentially, we hold the intentional infliction of emotional distress cause of action is not the proper remedy under these circumstances. This does not mean there is no remedy for wrongful litigation; for example, a malicious prosecution claim may provide a remedy under appropriate circumstances, but that cause of action—with its own specific proof requirements—was not asserted here. The trial court properly granted summary judgment on the intentional infliction claim.

### ABUSE OF PROCESS

Like many of Klein's other causes of action, the basis for his abuse of process claim against the Trustees in their individual capacities is the filing and continuation of the lawsuit. But by definition the abuse of process tort is not based on the filing and maintenance of a suit. *Blackstock v. Tatum*, 396 S.W.2d 463, 467 (Tex.Civ.App.-Houston 1965, no writ). Abuse of process has to do with the improper use of the process after it has been issued. *Graham v. Mary Kay Inc.*, 25 S.W.3d 749, 756 (Tex.App.-Houston [14th Dist.] 2000, pet. denied). If the process is used for the purpose for which it was intended, even though accompanied by an ulterior motive, no abuse of process occurs. *Id.* Rather than being grounded in improper use of process, Klein's claim is based on the filing and maintaining of a suit, which does not, as a matter of law, constitute abuse of process. A claim that a suit was wrongfully filed and maintained is properly brought as a malicious prosecution claim, a claim not pleaded here. This issue is overruled.

### NEGLIGENCE

Klein argues an issue of material fact exists concerning negligent con-

duct. Appellees point out that the negligence claim is based on the same factual allegations—the filing of suit and the public statements—as the other tort claims and is merely a "re-labeled" claim. We agree. Texas courts discourage the fracturing of one cause of action into several. *See Sledge v. Alsup*, 759 S.W.2d 1, 2 (Tex. App.-El Paso 1988, no writ). If a party files a claim in the context of allegations of the wrongful filing of a lawsuit, the appropriate cause of action is a malicious prosecution claim. *See ITT Consumer Fin. Corp. v. Tovar*, 932 S.W.2d 147, 155–56 (Tex.App.-El Paso 1996, writ denied). A party "cannot avoid the strict elements of a malicious prosecution action by labeling it negligence." *Id.* And allegations of defamation are properly brought as a defamation claim, which would include here, as we have stated, the element of actual malice. As a matter of law, the negligence action is not proper. Moreover, on appeal Klein did not address this ground—inapplicability of a negligence claim—and has waived it. This issue is overruled.

### TORTIOUS INTERFERENCE

Klein construes that portion of the summary judgment motion on tortious interference as a no-evidence motion, as do we. Appellees challenge the "intent" element of the tortious interference claim. *See generally Prudential Ins. Co. of America v. Financial Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex.2000) (elements of tortious interference). Klein relies on the affidavits attached to the motion for summary judgment where at least one of the Trustees indicated he had visited Klein's website after being informed of the contents of the article. Klein further points out that his deposition shows he has engaged in a variety of business operations in the local area and that, based on Faggard's affidavit, appellees were aware their claims lacked merit. We have already

considered Faggard's affidavit and concluded it raises no fact issue regarding appellees' knowledge or intent. The fact that one of the Trustees visited Klein's website where the article was published does not raise a fact issue on intent to tortiously interfere with business relations. *See* TEX.R. CIV. P. 166a(i); *Boales v. Brighton Builders, Inc.*, 29 S.W.3d 159, 164 (Tex.App.-Houston [14th Dist.] 2000, pet. denied). This issue is overruled.

### FREE SPEECH AND FREE PRESS

■ Klein claims the Trustees' conduct violated his constitutional rights of free speech and free press under the First Amendment to the United States Constitution. Essentially Klein maintains appellees retaliated against him for his statements concerning the prom by suing him and thereby abridging his First Amendment rights.

In a case involving a website publication, the federal Tenth Circuit Court of Appeals in *Smith v. Plati* dealt with a claim that a university, its officials, and a university employee retaliated against Smith for exercising his freedom of speech. *See Smith v. Plati*, 258 F.3d 1167, 1176–77 (10th Cir. 2001). Smith operated a website that provided information on the university's athletic teams. *Id.* At 1172. He claimed the university in various ways interfered with his news gathering efforts. *Id.* The court held that a plaintiff must prove the plaintiff's engagement in a constitutionally protected activity and the defendant's improper motivation in suing plaintiff because of plaintiff's exercise of his First Amendment rights. The *Smith* court also held plaintiff must prove that "the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity[.]" *Id.* at 1176 (citing *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir.2000)); *see*

*also Spear v. Town of West Hartford,* 954 F.2d 63, 67–68 (2nd Cir.1992).

Nothing in the record in this case indicates the District's suit or the Trustees' conduct operated to "chill" the continued publication of Klein's website. To the contrary, the evidence submitted by appellees shows that Klein continued to publish stories on the website concerning the District and its lawsuit. Since Klein's evidence does not raise a fact issue on the injury element, his claim for violation of his First Amendment rights cannot be sustained. *See Dallas Indep. Sch. Dist. v. Finlan,* 27 S.W.3d 220, 242–44 (Tex.App.-Dallas 2000, pet. denied)("The Fifth Circuit has ruled that there is no clearly established right to claim a First Amendment violation from the filing of a civil lawsuit, even one alleged to be malicious prosecution, in retaliation for the exercise of free speech rights.") (citing *Johnson v. Louisiana Dep't of Agriculture,* 18 F.3d 318 (5th Cir. 1994)). The trial court properly granted the motion for summary judgment on the First Amendment claim.

Klein also contends the appellees were not entitled to summary judgment on Klein's federal claims because they did not move for summary judgment on both Klein's federal constitutional claims and his claim under 42 U.S.C. § 1983 (2002). In his pleadings, Klein claims appellees interfered with his free speech and free press rights "in accordance with the United States Constitution generally and 42 U.S.C. § 1983, specifically." We construe the summary judgment motions to encompass both. We overrule this issue.

### ATTORNEYS' SUMMARY JUDGMENT

Klein sued the Attorneys for abuse of process, constitutional violations, "attorney misconduct," negligence, intentional inflic-

tion of emotional distress, tortious interference with business relations, official oppression, official oppression *per se,* and conspiracy. Klein also includes a reference in his rendition of the "facts" to the Attorneys' "fictitious and/or fraudulent" filing of a suit against him. On appeal, Klein does not challenge the dismissal of the causes of action relating to official oppression or conspiracy, and we do not consider them.

The Attorneys sought a no-evidence summary judgment on abuse of process, constitutional violations, "attorney misconduct," negligence, and intentional infliction of emotional distress. They also filed a traditional motion, which is global and covers all Klein's causes of action. The trial court dismissed all of Klein's causes of action against the Attorneys.

Klein challenges the no-evidence summary judgment only on the grounds that discovery was "significantly incomplete" at the time of rendition of judgment and contends the trial court should have granted his continuance rather than granting summary judgment. We have already considered Klein's continuance issue and found that the trial court did not err in denying his request for a continuance. He raises no other issues regarding the no-evidence summary judgment. *See San Jacinto River Auth. v. Duke,* 783 S.W.2d 209, 209–10 (Tex.1990). Consequently, the summary judgment is not erroneous as to the abuse of process, constitutional violations, "attorney misconduct," negligence, and intentional infliction of emotional distress causes of action.

The Attorneys urge that as a matter of law a litigant may not sue opposing counsel for actions taken in representing a client.[3] In his response to the summary

---

**3.** The motion for summary judgment encom-

passes Klein's tortious interference cause of

judgment motion, Klein claims the Attorneys committed fraud on the court, as well on himself, by pursuing legal action against Klein that is based on "factual and/or legal grounds that [the Attorneys] knew to be fictitious." Klein argues the grounds are fictitious and fraudulent because the government "can not maintain a cause of action for defamation for statements criticizing government, even if the alleged defamatory statements are false." The elements of a fraud cause of action are: "(1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury." *In re FirstMerit Bank, N.A.,* 52 S.W.3d 749, 758 (Tex. 2001).

■ As a general rule, a nonclient cannot sue an attorney for malpractice. *Malone v. Abraham, Watkins, Nichols & Friend,* No. 01–99–01192–CV, —— S.W.3d ——, ——, 2002 WL 1722337, at *5 (Tex. App.-Houston [1st Dist.] 2002, no pet. h.) (not yet released for publication). Klein was not a client of the Attorneys. The Texas Supreme Court has recognized a negligent misrepresentation claim by a nonclient under appropriate circumstances. *See McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests,* 991 S.W.2d 787, 794 (Tex.1999). But the Court noted "Generally, courts have acknowledged that a third party's reliance on an attorney's representation is not justified when the representation takes place in an adversari-

al context." *Id.* An attorney has a duty to zealously represent the attorney's client within the bounds of the law. *Malone,* 01–99–01192–CV, —— S.W.3d at ——, 2002 WL 1722337, at *5. In fulfilling that duty an attorney may raise a legitimate argument to a court for a change in existing law, without thereby subjecting the attorney to liability to the opposing party. *See generally Guzman,* 827 S.W.2d at 448.

Klein submits that his response to the Attorneys' summary judgment motion, with Faggard's affidavit, raises a fact issue on attorney misconduct constituting fraud. We have already discussed Faggard's affidavit herein and concluded his belief that Melody Thomas knew the suit was frivolous is based on surmise and speculation. Klein presented no evidence raising a fact issue on a claim based on fraud or other attorney misconduct against the Attorneys.

■ An attorney can be punished for wrongful conduct while representing a party in a lawsuit. *Bradt v. West,* 892 S.W.2d 56, 72 (Tex.App.-Houston [1st Dist.] 1994, writ denied). As pointed out in *Bradt,* the law provides for punishment of such acts in Tex.R. Civ. P. 13 (power to punish attorney for filing improper pleadings, motions, and "other papers"); Tex.R. Civ. P. 215 (power to punish attorney for abusing discovery); and Tex. Gov't Code Ann. § 21.002 (Vernon Supp.2003) (power to punish attorney for contempt of court). *See Bradt,* 892 S.W.2d at 72. Under appropriate circumstances, the party seeking sanctions may also rely on sections 9.012 or 10.004 of the Texas Civil Practices and Remedies Code. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 9.012, 10.004 (Vernon 2002). However, no issue regarding sanctions presented to the trial court is asserted in

action. Klein does not present, as to the Attorneys, the tortious interference claim on

appeal. Consequently, he has waived it.

this appeal. We previously denied a request for sanctions based on the District's appeal of the summary judgment against the District. *See Port Arthur Indep. Sch. Dist.*, 70 S.W.3d 349.

Appellant's issues are overruled. The judgment of the trial court is affirmed.

AFFIRMED.