NO. 07-11-0418-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

JULY 31, 2012

_____

BOMAR OIL AND GAS, INC.,

Appellant

v.

D. MARK LOYD,

Appellee

_____

FROM THE 87TH DISTRICT COURT OF FREESTONE COUNTY;

NO. 10-212B; HONORABLE DEBORAH OAKES EVANS, PRESIDING

_____

*Opinion*

_____

Before QUINN, C.J., PIRTLE, J., and BOYD, S.J.[1]

Though left to wonder why Bomar Oil and Gas, Inc. did not wait to execute division orders until it received the title opinion it allegedly commissioned, we affirm.

*Background*

Before us, we have the next chapter in the continuing saga between Bomar Oil and Gas, Inc. and D. Mark Loyd. Originally, Loyd sued Bomar to recover monies related to the production of oil and gas on realty in which he owned an interest as a co-

_____

[1]John T. Boyd, Senior Justice, sitting by assignment.

tenant. While the interests of other co-tenants apparently were encompassed by a mineral lease Bomar acquired, his was not. Furthermore, that lease pertained to the Marie Dodge Well #1.

Upon re-developing the Marie Dodge, Bomar circulated a division order specifying the purported ownership interests in the well's production of the co-tenants including Loyd and Bomar. The "After Payout Revenue Interest" recorded on the document by Bomar and attributable to Loyd was .3055556. Loyd initially disputed that percentage, believing he owned about a .40 interest. A lawsuit followed wherein Loyd sought, among other things, an accounting for the mineral production from the well and expenses related thereto. He also averred that some of the expenses assessed by Bomar were unreasonable or excessive. Though L.B. Preston, Bomar's designated representative and owner, testified to hiring someone to render a title opinion and that opinion had yet to be rendered at the time of trial, Loyd and Bomar agreed as to the accuracy of the latter's estimations. That is, the parties agreed before trial that the "title dispute" (as referred to by the parties at trial) would be resolved by Loyd accepting that he owned a .305555 interest in the land. Furthermore, that percentage was used by the jury to calculate the damages it eventually awarded Loyd against Bomar. Thereafter, the trial court entered judgment upon the jury's verdict.

Bomar appealed. That resulted in the modification of the judgment, being a slight reduction of the damages awarded, and an affirmance of the judgment as modified. And, in so rendering its judgment, the majority opinion noted that "Loyd possesses a .3055555 interest" in the land. *Bomar Oil & Gas, Inc. v. Loyd,* 10-08-00016-CV, 2009

2

Tex. App. LEXIS 5505, at *32 (Tex. App.–Waco July 15, 2009, pet. denied).[2] At that point, a reasonable person could well have thought that the litigation was over. It was not.

Several years later, Loyd executed a separate division order tendered by a different operator (*i.e.,* Goldston Corporation) covering the development of minerals in a different horizon of the same realty. Furthermore, his interest in that document was noted as approximately .20. Bomar learned of this, proclaimed that Loyd's interest in the Marie Dodge Well should be no more than .20, revoked its division order with him, tendered him a new one reflecting the smaller interest, began withholding payment of proceeds equal to the difference between the 20 and 30 percent, and demanded repayment of the supposedly excessive monies paid him under the revoked division order. This resulted in Loyd again suing Bomar to collect the withheld monies and to obtain a declaration of his percentage interest in the land. The trial court granted his motion for summary judgment, denied that of Bomar, and awarded Loyd damages. It also found his ownership interest to be .305555. Bomar appealed, contending that the trial court erred in granting Loyd's summary judgment and denying its own.

*Discussion*

Of the several grounds for summary judgment proffered by Loyd, one encompassed the theory of collateral estoppel. The latter prevents parties from relitigating ultimate issues of fact previously litigated. It applies when the issue was fully and fairly litigated, essential to the prior judgment, and identical to the issue in the

___

[2]In explaining why it believed Loyd was entitled to prejudgment interest, the dissent acknowledged that the issue of title was removed from the case "by Loyd's stipulation" to owning a .3055555 percent interest. *Bomar Oil & Gas, Inc. v. Loyd*, 10-08-00016-CV, 2009 Tex. App. LEXIS 5505, at *38-39 (Tex. App.–Waco July 15, 2009, pet. denied) (dissenting opinion).

3

pending action. *State Dep't of Pub. Safety v. Petta,* 44 S.W.3d 575, 579 (Tex. 2001). Whether an issue has been so litigated requires consideration of whether the parties were fully heard, whether the court supported its decision with a reasoned opinion, and whether the decision was subject to appeal or was reviewed on appeal. *Mower v. Boyer,* 811 S.W.2d 560, 562 (Tex. 1991). And, while the concept of an issue being actually litigated denotes resolution by some factfinder, be it a judge or jury, that is not always the case. For instance, guilty pleas dispensing with the need for an actual criminal trial have been held to collaterally estop the individual from contesting in a later civil suit ultimate facts encompassed within the plea. *See DeLese v. Albertson's, Inc.*, 83 S.W.3d 827, 831 (Tex. App.–Texarkana 2002, no pet.) (stating that a "guilty plea, as opposed to a conviction after trial, also collaterally estops a plaintiff from relitigating his or her guilt because 'a valid guilty plea serves as a full and fair litigation of the facts necessary to establish the elements of the crime'"); *Johnston v. American Med. Int'l*, 36 S.W.3d 572, 576 (Tex. App.–Tyler 2000, pet. denied) (stating that a "plea of guilty, as opposed to a conviction after trial, also collaterally estops a plaintiff from relitigating his guilt, since 'a valid guilty plea serves as a full and fair litigation of the facts necessary to establish the elements of the crime'"); *accord In re Briggs,* 350 S.W.3d 362, 369 (Tex. App.--Beaumont 2011, pet. denied) (holding that the trial court did not err in excluding testimony by Briggs concerning the reasons why he plead guilty to the sexual offenses for which he was convicted because ". . . Briggs's guilt had already been determined in the prior criminal proceedings and could not be relitigated"). According to the panel in *Delese,* collateral estoppel applied since Delese not only stipulated to the pertinent facts during his criminal proceedings but also ". . . had an opportunity to plead not guilty, to

4

call witnesses, to cross-examine witnesses, and have all of the protections afforded a defendant in a criminal trial, including the requirement of evidence to prove his guilt beyond a reasonable doubt [and] . . . could have fully placed the burden on the State so the testimony against him could have been fully developed." *Delese v. Albertson's, Inc.,* 83 S.W.3d at 832. These circumstances provided him ". . . the opportunity to fully and fairly litigate the facts in the [criminal] case," according to the court, *id.,* so he could not dispute in a subsequent civil case that which he stipulated in the criminal matter.

Deeming a stipulation executed in a prior suit sufficient to give rise to collateral estoppel seems rather logical. It constitutes not only an agreement or concession made in a judicial proceeding by parties, but also a judicial admission. *Shepherd v. Ledford*, 962 S.W.2d 28, 33 (Tex. 1998) (stating that by stipulating to the existence of a common law marriage, the parties judicially admitted that the couple were common law spouses). When accepted by the court, the stipulation becomes conclusive as to the fact conceded, *id.*; *Houston Lighting & Power Co. v. City of Wharton*, 101 S.W.3d 633, 641 (Tex. App.–Houston [1st Dist.] 2003, pet. denied), and serves as proof on an issue that otherwise would be tried. *Houston Lighting & Power Co. v. City of Wharton*, 101 S.W.3d at 641. Consequently, "the parties are estopped from claiming to the contrary" in a subsequent proceeding. *Id.*; *accord Mid-Continent Group v. Goode*, No. 07-09-0181-CV, 2011 Tex. App. LEXIS 6695, at *30 (Tex. App.–Amarillo 2011, no pet.) (so holding and citing *Houston Lighting & Power Co.*). Simply put, we see little reason why litigants who agree to a fact pattern in one case and induce the factfinder to adopt that fact pattern to resolve that case should not be estopped from questioning the very same

5

facts in a later suit. Nor do we doubt that the foregoing principles should be utilized at bar.

Bomar represented to Loyd prior to and during the 2004 litigation that he owned a .305555 interest in the realty at issue. While Loyd thought he owned a larger percentage, he eventually accepted Bomar's factual representation. Indeed, Bomar's president described the situation at trial like this: 1) a title company had been contacted to provide the information Bomar "would have required" to "resolve the title dispute," 2) from our "direct information" "we had his [Loyd's] interest at 30.55 percent," 3) the information from the title company had yet to be received when Loyd sued, 4) the "title dispute" was "resolved," by Loyd ". . . agree[ing] to our interest because he found out the material he needed to have," and 5) Loyd was entitled to that percentage since that was what Bomar stated his percentage was via prior correspondence. This exchange, at the very least, illustrates that Bomar had the opportunity to litigate the "title dispute" involving Loyd's ownership interest in the property and present both witnesses and evidence on the matter had it so wanted. Rather than that happening, the litigants eventually decided to resolve the "title dispute" by stipulating (that is, agreeing or conceding) to Bomar's representation that Loyd owned a .305555 interest in the property, manifesting that agreement by executing a division order disclosing Loyd's interest to be that percentage, and filing the document "with the papers as part of the [court] record."

That the trial court accepted the stipulation and that it was incremental to the disposition of the 2004 litigation also is clear. The jury charge proves as much. Of the several issues to be addressed by the jury one involved the determination of damages

6

"for amounts charged against [Loyd's] proportionate share of production which were not necessary and reasonable costs of drilling/recompletion, producing, and marketing." In making the determination, the jury was instructed by the trial court that "Loyd's pro-rata share [was] .305555." Logic compels us to reasonably infer that had the trial court not accepted the concession or stipulation, it would not have instructed the jury as it did. Furthermore, in deciding what damages to award Loyd, the jury had to know his ownership interest in the land and use it in its calculations.[3]

That the appellate court acknowledged, in the majority opinion, Loyd's interest to be .305555 is also telling. If anything, it reveals that the revewing court, like Bomar, Loyd, the trial court, and the jury, similarly accepted the stipulation.

Nor can anyone reasonably deny that in revoking the division order, Bomar rejected that to which it previously stipulated. It no longer wanted to pay Loyd a share of production equal to his .305555 ownership interest, less proportionate expenses. And, given its own pleadings in this case, (*e.g.*, suing to recover for unjust enrichment and fraud due to the purported error in calculating that interest per the stipulation), it attempted to relitigate that very same topic.

In sum, there exists no material issue of fact regarding the application of collateral estoppel. The parties to the 2004 judgment and suit giving rise to this appeal are the same. Furthermore, Loyd's ownership interest in the same property served as an ultimate fact in both proceedings. That the topic was fully and fairly litigated by Bomar via stipulation and testimony is unquestionable, as is Bomar's current attempt to

---

[3]According to our Supreme Court, "unleased cotenants are generally entitled to 'the value of the minerals taken less the necessary and reasonable cost of producing and marketing the same' as opposed to a fractional royalty from production paid to the lessor." *BP America Prod. Co. v. Marshall*, 342 S.W.3d 59, 71-72 (Tex. 2011). So, it would be necessary for a factfinder to know what percentage of the land Loyd owned to determine what Bomar owed him for producing minerals from it.

7

collaterally attack that determination.  More importantly, Bomar, Loyd, the trial court, the jury, and the reviewing court accepted the stipulation regarding Loyd's ownership interest in the property to adjudicate the 2004 litigation.  So, Bomar was and is estopped from relitigating the matter, and the trial court did not err in so concluding as a matter of law.[4]

Having ruled as we do, it is unnecessary to consider whether any other ground alleged in Loyd's motion for summary judgment supported entry of the decree.  It is enough that the decree was warranted under at least one theory.  *FM Prop. Operating Co. v. City of Austin,* 22 S.W.3d 868, 872 (Tex. 2000) (holding that a summary judgment can be affirmed on any one ground alleged in the motion).  That said, we now turn to Bomar's other contentions on appeal.

*Revocation of the Division Order*

According to Bomar, it was entitled to revoke the division order pertaining to production from the Marie Dodge Well.  Whether it did or not is irrelevant to the outcome.  This is so because the factual issue of ownership previously had been litigated, and Bomar is collaterally estopped from attacking it.  More importantly, division orders do not supplant leases or deeds.  *Gravenda v. Strata Energy, Inc.*, 705 S.W.2d 690, 691 (Tex. 1986).  Given this, their existence or non-existence does not alter whatever property or royalty interest someone may own.  The document simply provides a way for distributing proceeds from the sale of minerals.  *Id.*  So, even if the order could have been revoked, that would not vitiate the prior stipulation that was

---

[4]We caution against reading this opinion as purporting to dictate the ownership interests in the property between Loyd and any strangers to this litigation.  The opinion's ramifications are restricted to disputes between Loyd and Bomar, and the latter's successors-in-interest, if any.  Furthermore, nothing of record suggests that anyone other than Bomar questions the extent of Loyd's ownership interest in the particular well operated by Bomar.

previously relied upon by all involved and that designated Loyd's unleased ownership interest in the land and minerals thereunder to be .305555. The contention is overruled.

*Loyd's Purported .20488104 Interest*

Bomar next argues that it "conclusively established" Loyd's mineral interest to be a .20488104 interest. Again, our ruling *viz* collateral estoppel obligates us to overrule this issue as well. It also precluded Bomar from recovering damages from Loyd representing the difference between the .20 interest and the .305555 interest to which it previously stipulated.

*Counterclaims*

Next, Bomar argues that the trial court erred in granting summary judgment that barred its counterclaims. This contention too is founded upon the proposition that the 2004 litigation did not resolve the issue about Loyd's interest in the property. Because we concluded that it did, we overrule the matter.

*Interest and Attorney's Fees*

Next, Bomar contends that the trial court erred in awarding Loyd prejudgment interest and attorney's fees. We overrule the issues for several reasons.

First, both are founded upon the notion that there arose a "title dispute" between the two parties when Loyd executed a division order illustrating a lesser ownership interest in a well operated by a different operator in a different horizon. So long as that "title dispute" existed (*i.e.,* whether Loyd's ownership interest in the minerals being taken through the Marie Dodge Well #1 was .305555), neither interest nor attorney's fees could accrue, according to Bomar. Statute does provide that royalty payments may be withheld without prejudment interest accruing when there exists a dispute concerning

9

title that would affect the distribution of payments. TEX. NAT. RES. CODE ANN. § 91.402(b)(1) (West 2011). However, the title dispute must be "legitimate." *Headington Oil Co., L.P. v. White*, 287 S.W.3d 204, 210 (Tex. App.–Houston [14th Dist.] 2009, no pet.). Here, the purported "title dispute" concerned Loyd's ownership interest in the property. It was that same "title dispute" that Bomar's president discussed during the 2004 trial. It was that same dispute that the parties to the 2004 litigation agreed to resolve by stipulating to Loyd having a .305555 interest. And, it was that interest used in calculating the damages awarded and in supposedly ending the 2004 litigation. Because Bomar was and is collaterally estopped from re-adjudicating the previously settled "title dispute," we reject the premise that a legitimate "title dispute" existed between Loyd and Bomar. So the foundation underlying Bomar's argument is defective.

Next, Bomar argues that a portion of the attorney's fees awarded Loyd were not reasonable and necessary. Why they were not goes unexplained. Nor did it cite authority supporting its contention. Consequently, the matter was inadequately briefed and, thus, waived. *In re L.M.M.,* 247 S.W.3d 809, 812 (Tex. App.–Dallas 2008, pet. denied) (stating that the failure to cite authority or develop an argument results in the waiver of the issue).

Next, Bomar argues that the trial court erred in granting summary judgment against both its unjust enrichment and fraud claims. Through the former, Bomar sought to recover the monies paid representing the difference between the .305555 interest in the property and supposed .20 interest. Having determined that it is estopped from contesting Loyd's .305555 interest, its claim of unjust enrichment is baseless, as a matter of law.

10

As for the matter of fraud, Bomar asserts that it relied upon Loyd's representation that he owned a .305555 interest in the land when he actually owned less. Yet, no one disputes that Loyd originally suggested he owned more than .305555 and that Bomar disagreed and told him he only owned .305555. And, though Bomar proffered evidence about engaging a title company to determine who owned what interests, it did not wait until that opinion was obtained before representing Loyd's interest to be .305555 and so stipulating. That there was a dispute regarding the interest in 2004, that Bomar accused Loyd of misrepresenting his interest via pleadings filed in the 2004 litigation, and that Bomar testified to obtaining a title company to determine everyone's interest is undisputed. Furthermore, it is the same purported misrepresentation regarding Loyd's interest that underlies the fraud allegation urged below. Given that more than four years lapsed since the time Bomar either knew of or could have reasonably discovered the supposed misrepresentation, the trial court did not err in concluding that the claim was barred by limitations. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.004(a)(4) (West 2002) (stating that a person must bring an action for fraud within four years of its accrual).

In sum, all issues are overruled, and the trial court's summary judgment favoring Loyd is affirmed.


Brian Quinn
Chief Justice


11