

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-25-00167-CV

———————————————

WILLIAM DEAN PERRY, HEATHER MARIE PERRY, AND ALEXANDER M.
BRAUER, Appellants

V.

ROBERT J. JANSON, DAVID B. MELTZER, LACY J. CONTE, SHERYL D.
CRUTCHFIELD, AND STEPHEN L. GRAHAM, Appellees

———————————————

On Appeal from the 362nd District Court
Denton County, Texas
Trial Court No. 24-10260-362

———————————————

Before Womack, Wallach, and Walker, JJ.
Memorandum Opinion by Justice Womack

# MEMORANDUM OPINION

## I. INTRODUCTION

This appeal arises from a dispute between Appellants William and Heather Perry and their homeowners' association, The Lakes Residential Association, Inc. (the HOA). After the HOA sued the Perrys for violating certain restrictive covenants by building an unauthorized carport[1] on their property, the Perrys filed counterclaims against the HOA and third-party claims for intentional infliction of emotional distress (IIED), negligence, and gross negligence against the individual members of the HOA's board. Following multiple rounds of dispositive motions, the trial court granted the board members summary judgment on all of the Perrys' third-party claims, severed those claims into a separate suit, and rendered a final judgment dismissing all of those claims with prejudice.

Alleging that the Perrys' third-party claims were frivolous and brought in bad faith, the board members moved to modify the final judgment to include an award of sanctions against the Perrys and their counsel. After full briefing and a hearing, the trial court granted the board members' motion and ordered the Perrys and their trial counsel to pay, jointly and severally, sanctions in the amount of $184,607.60.

---

[1]As discussed below, whether the offending structure is, in fact, a carport is a point of contention among the parties. The Perrys maintain that it is a cover for their air-conditioning unit, not a carport.

On appeal, the Perrys and their trial counsel (collectively, Appellants) contend that the trial court erred by granting the board members summary judgment on each of the Perrys' third-party claims and by awarding the board members sanctions.[2] For the reasons set forth below, we affirm the trial court's summary judgment as to the Perrys' IIED and gross-negligence claims, but we reverse the trial court's summary judgment on the Perrys' negligence claim. In light of this partial summary-judgment reversal, we reverse the trial court's sanctions award without considering its merits and remand the case to the trial court for further proceedings.

## II. BACKGROUND

The Perrys reside within the Lakes on Legacy Drive development in Frisco, Texas. The Perrys' home, like all others in the development, is subject to certain covenants, conditions, and restrictions (CCRs). The HOA is authorized to administer and enforce the CCRs.

The CCRs provide for the formation of an Architectural Control Committee (ACC) to promulgate architectural standards and design guidelines for the development. All homeowners are required to obtain ACC approval before constructing or modifying any structures on their respective lots.

In October 2019, the Perrys constructed a twelve-foot by twenty-six foot permanent cover over their air-conditioning unit to prevent leaves, flowers, and sap

---

[2]The board members elected not to file an appellees' brief.

from a nearby crepe myrtle from falling into the unit and damaging it. Because the Perrys believed that the cover was below their fence line and could not be seen from outside their property, they did not seek ACC approval before constructing it.

Shortly thereafter, the HOA sent the Perrys three CCR-violation notices. The notices alleged (1) that—because of the newly constructed air-conditioning-unit cover, which the HOA considered a carport—the Perrys' home's roofline did not match the one previously approved by the ACC;[3] (2) that the Perrys had installed a floodlight without ACC approval; and (3) that the Perrys' fence exceeded the eight-foot maximum-height restriction.

In November 2019, the Perrys sent a detailed letter to the HOA responding to each of the violation notices. In its written response, the HOA stated that it would waive the violation concerning the height of the fence, but it maintained that the floodlight would have to be removed or lowered and that the "carport" needed to be removed because "it [was] an unapproved structure."

After the parties' efforts to resolve the matter were unsuccessful, the HOA filed suit against the Perrys, seeking injunctive relief; damages, including fines and statutory penalties; and attorney's fees. The Perrys asserted counterclaims against the HOA and ultimately added third-party claims for IIED, negligence, and gross

---

[3]Although the notice did not explicitly reference the air-conditioning-unit cover, it is clear from the record that the construction of this structure is what caused the Perrys' home's roofline to deviate from the one approved by the ACC.

negligence against the individual members of the HOA's board. In their third-party petition, the Perrys alleged that the board members' actions had caused the symptoms associated with Ms. Perry's preexisting brain tumor to worsen and had caused Mr. Perry to have to go back on blood-pressure medication. They also pleaded for mental-anguish damages.

In March 2024, the board members filed a traditional and no-evidence summary-judgment motion in which they argued, inter alia, that (1) the federal Volunteer Protection Act,[4] the Texas Charitable Immunity and Liability Act of 1987,[5] and the Texas Non-Profit Corporation Act[6] shielded them from liability on the Perrys' third-party claims and (2) that the Perrys' IIED claim failed as a matter of law because the Perrys could not show, among other things, that the board members had engaged in extreme and outrageous conduct or that the Perrys lacked an alternative remedy for their alleged emotional distress. After considering the motion, the Perrys' response, the summary-judgment evidence, and the entire record, the trial court

---

[4]*See* 42 U.S.C. §§ 14501–505.

[5]*See* Tex. Civ. Prac. & Rem. Code Ann. §§ 84.001–.008.

[6]*See* Tex. Bus. Orgs. Code Ann. §§ 22.001–.516.

signed an order granting the motion as to the Perrys' IIED claim but denying it as to their negligence and gross-negligence claims.[7]

In August 2024, the board members filed another traditional and no-evidence summary-judgment motion in which they argued, inter alia, that (1) the Perrys' negligence and gross-negligence claims should be dismissed because they were nothing more than artfully pleaded versions of their previously dismissed IIED claim, (2) the Perrys could not meet their burden to show that the board members' conduct was the proximate cause of their alleged injuries because they had failed to designate a medical expert, and (3) the Perrys' gross-negligence claim failed because they had no evidence showing that the alleged acts and omissions supporting this claim involved an extreme degree of risk or that the board members were subjectively aware of this risk. Following a hearing on September 26, 2024, the trial court orally granted the board members' summary-judgment motion as to the Perrys' negligence and gross-negligence claims.[8] The trial court then signed an order severing all of the Perrys'

---

[7]Because the record showed that all of the Perrys' claims were based on alleged conduct that took place before third-party defendant Cindy Miller joined the HOA board, the trial court dismissed with prejudice all of the Perrys' claims against her.

[8]In their second summary-judgment motion, the board members did not ask the trial court to reconsider the grounds raised in their first summary-judgment motion. Accordingly, our review of the trial court's summary judgment on the Perrys' negligence and gross-negligence claims is limited to the grounds raised in their second motion. *See Dun Huang Plaza Assoc., Inc. v. SUN9028, Inc.*, 693 S.W.3d 811, 815 (Tex. App.—Houston [14th Dist.] 2024, pet. denied) ("Our review is limited to the issues presented to the trial court in the motion for summary judgment, as the judgment may

third-party claims into a separate suit and rendered a final judgment dismissing all of those claims with prejudice.

In December 2024, the board members filed a motion to modify the final judgment to include an award of sanctions against the Perrys and their counsel for asserting frivolous claims pursuant to Chapter 10 of the Civil Practices and Remedies Code and Rule 13 of the Texas Rules of Civil Procedure. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 10.001–.005; Tex. R. Civ. P. 13. After full briefing and a hearing, the trial court granted the board members' motion and ordered Appellants to pay, jointly and severally, sanctions in the amount of $184,607.60.

Appellants filed a motion to set aside or modify the final judgment awarding sanctions. After that motion was denied by operation of law, they timely appealed.

## III. Discussion

Appellants raise three issues on appeal. First, they contend that the summary judgment on the Perrys' IIED claim should be reversed because the summary-judgment evidence raises a genuine issue of material fact as to each challenged element of this claim and because the state and federal statutes on which the board members relied do not shield them from liability. Second, they contend that the summary judgment on the Perrys' negligence and gross-negligence claims should be reversed because the board members failed to show that these claims were actually

_____

be affirmed only on grounds presented in the motion." (citing *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 676 (Tex. 1979))).

based on intentional—as opposed to negligent—conduct and because the Perrys presented sufficient summary-judgment evidence to create a fact issue as to their negligence claim's proximate-cause element and their gross-negligence claim's elements. Third, they contend that the trial court abused its discretion by awarding the board members sanctions. We will address each of these issues in turn below.

## A. Standard of Review: Summary Judgment

We review a summary judgment de novo. *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013). When, as here, the trial court does not specify the grounds for its ruling, a summary judgment must be affirmed if any of the grounds on which judgment was sought are meritorious. *Id.* at 248. Evidence is considered in the light most favorable to the nonmovant, crediting evidence a reasonable jury could credit and disregarding contrary evidence and inferences unless a reasonable jury could not. *Id.*; *see Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 756 (Tex. 2007); *City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005).

When a party files a combined no-evidence and traditional motion for summary judgment, we generally consider the no-evidence motion first. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). A properly filed no-evidence motion shifts the burden to the nonmovant to present evidence raising a genuine issue of material fact supporting each element contested in the no-evidence motion. *Wal-Mart Stores, Inc. v. Xerox State & Local Sols., Inc.*, 663 S.W.3d 569, 576 (Tex. 2023). If the nonmovant fails to meet its burden under the no-evidence motion, there is no need to

8

address the challenge to the traditional motion as it necessarily fails. *Merriman*, 407 S.W.3d at 248.

To defeat a no-evidence motion, the nonmovant must produce evidence raising a genuine issue of material fact as to the challenged elements. *See Ridgway*, 135 S.W.3d at 600. "A genuine issue of material fact exists if the evidence 'rises to a level that would enable reasonable and fair-minded people to differ in their conclusions.'" *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 220 (Tex. 2017) (quoting *Merrell Dow Pharms., Inc. v. Havner,* 953 S.W.2d 706, 711 (Tex. 1997)). The evidence does not create an issue of material fact if it is "so weak as to do no more than create a mere surmise or suspicion" that the fact exists. *Kia Motors Corp. v. Ruiz*, 432 S.W.3d 865, 875 (Tex. 2014) (quoting *Ridgway*, 135 S.W.3d at 601). A no-evidence challenge will be sustained when

> (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact.

*King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003) (quoting *Merrell Dow Pharms., Inc.*, 953 S.W.2d at 711).

A defendant is entitled to traditional summary judgment if it conclusively negates at least one essential element of the plaintiff's cause of action, showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *Hillis v. McCall*, 602 S.W.3d 436, 439–40 (Tex. 2020); *Harkins v. Wal-Mart*

9

*Stores Tex., LLC*, No. 02-21-00201-CV, 2022 WL 3453548, at *4 (Tex. App.—Fort Worth Aug. 18, 2022, pet. denied) (mem. op. on reh'g).

## B. IIED

In their first issue, Appellants contend that the trial court erred by granting the board members summary judgment on the Perrys' IIED claim. We disagree.

To prevail on an IIED claim, a party must prove the following elements: (1) the plaintiff is a person; (2) the defendant acted intentionally or recklessly; (3) the plaintiff suffered severe emotional distress; (4) the defendant's conduct was extreme and outrageous; (5) the defendant's conduct proximately caused the plaintiff's emotional distress; and (6) no alternative cause of action would provide a remedy for the severe emotional distress caused by the defendant's conduct. *Lyden v. Aldridge*, No. 02-23-00227-CV, 2023 WL 6631528, at *6 (Tex. App.—Fort Worth Oct. 12, 2023, no pet.) (mem. op.); *see Hersh v. Tatum*, 526 S.W.3d 462, 468 (Tex. 2017); *Hoffman-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004). Because the Perrys failed to show that a genuine issue of material fact existed as to each of these essential elements, the trial court properly granted the board members summary judgment on the Perrys' IIED claim.

IIED's sixth essential element reflects its status as a "gap-filler" tort that was "judicially created for the limited purpose of allowing recovery in those rare instances in which a defendant intentionally inflicts severe emotional distress in a manner so unusual that the victim has no other recognized theory of redress." *Hoffman-La Roche,*

10

*Inc.*, 144 S.W.3d at 447 (citing *Standard Fruit and Vegetable Co. v. Johnson*, 985 S.W.2d 62, 68 (Tex. 1998)). Thus, "[w]here the gravamen of a plaintiff's complaint is really another tort, [IIED] should not be available." *Id.* (citing numerous cases); *see Martinez v. English*, 267 S.W.3d 521, 530–31 (Tex. App.—Austin 2008, pet. denied) (holding that plaintiff could not maintain IIED claim because its gravamen was the same as his malicious-prosecution claim). Under this principle, plaintiffs may not recover for IIED if they have other avenues of redress, regardless of their alternate claims' ultimate success. *See Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 816 (Tex. 2005).

One of the grounds on which the board members sought summary judgment was that the Perrys' IIED claim was barred because it was based on the same facts and circumstances as their negligence and gross-negligence claims. That all of the Perrys' claims are based on the same set of facts is undeniable. Indeed, the Appellants do not contend otherwise. Rather, they unpersuasively argue—as they did in the trial court—that IIED's gap-filler element does not exist. Appellants base this argument solely on the fact that this element was not explicitly enumerated in *Hersh*, 526 S.W.3d at 468, but Texas courts—including the Texas Supreme Court and this court—have consistently recognized the gap-filler element. *See Hoffman-La Roche, Inc.*, 144 S.W.3d at 447; *McShirley v. Lucas*, No. 02-23-00229-CV, 2024 WL 976512, at *13 (Tex. App.—Fort Worth Mar. 7, 2024, pet. denied) (mem. op.); *Lyden*, 2023 WL 6631528, at *3; *see also Doe v. Cruz*, 683 S.W.3d 475, 500 (Tex. App.—San Antonio 2023, no pet.) (op. on reh'g) (holding that plaintiff had failed to satisfy his burden under the Texas Citizens

11

Participation Act to "present evidence of a prima facie case on each essential element of his IIED claim" because "the factual basis of [his] IIED claim [was] the same as his alternative claims"); *Patel v. Patel*, No. 14-18-00771-CV, 2020 WL 2120313, at *10 (Tex. App.—Houston [14th Dist.] May 5, 2020, no pet.) (mem. op.) (holding plaintiff's IIED claim "fail[ed] because [IIED] is a gap-filler tort and there [was] no gap to fill"); O'Connor's Texas Causes of Action ch. 14, § 1.1 (2025) (listing six IIED elements, including that "[n]o alternative cause of action would provide a remedy for the severe emotional distress caused by the defendant's conduct").

By alleging other causes of action based on the same set of facts as their IIED claim, the Perrys effectively pleaded their IIED claim out of court. *See Creditwatch*, 157 S.W.3d at 816; *Hoffman-La Roche, Inc.*, 144 S.W.3d at 447; *see also Kersh v. UnitedHealthcare Ins. Co.*, 946 F. Supp. 2d 621, 644–45 (W.D. Tex. 2013) (concluding that plaintiff's IIED claim "fail[ed] under Texas law and must be dismissed" because it was based on the same conduct underlying her other tort claims); *Mayo v. Halliburton Co.*, No. H-10-1951, 2010 WL 4366908, at *4 (S.D. Tex. Oct. 26, 2010) (dismissing plaintiff's IIED claim because it was based on the same facts as her negligence and negligent-undertaking claims). This, standing alone, entitled the board members to summary judgment on the Perrys' IIED claim. *See Stewart v. Lexicon Genetics, Inc.*, 279 S.W.3d 364, 372 (Tex. App.—Beaumont 2009, pet. denied) (affirming district court's grant of summary judgment on IIED claim because "[n]one of the alleged

extreme and outrageous conduct [was] independent of the conduct that form[ed] the basis of the other torts asserted in the petition").

But even apart from IIED's gap-filler element, summary judgment was nevertheless appropriate because the board members' alleged conduct was not sufficiently extreme and outrageous to support an IIED claim. *See Bradford v. Vento*, 48 S.W.3d 749, 758 (Tex. 2001) ("Whether a defendant's conduct is 'extreme and outrageous' is a question of law." (citing *Brewerton v. Dalrymple*, 997 S.W.2d 212, 216 (Tex. 1999))); *see also Tiller v. McLure*, 121 S.W.3d 709, 713 (Tex. 2003) (explaining that "[i]t is for the court to determine, in the first instance, whether a defendant's conduct was extreme and outrageous" and that the issue should be submitted to the jury only "when reasonable minds may differ").

To meet the extreme-and-outrageous standard, conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Hoffman-La Roche, Inc.*, 144 S.W.3d at 445; *see Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex. 1993). This "rigorous" legal standard helps "assure a meaningful delineation between inadvertence and intentionally or recklessly outrageous misconduct." *Twyman*, 855 S.W.2d at 622. Generally, "insensitive or even rude behavior does not constitute extreme and outrageous conduct. Similarly, mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities do not rise to the level of extreme and outrageous conduct." *GTE Sw., Inc. v. Bruce*,

998 S.W.2d 605, 612 (Tex. 1999) (citation omitted); *see also Horton v. Montgomery Ward & Co., Inc.*, 827 S.W.2d 361, 369 (Tex. App.—San Antonio 1992, writ denied) ("There is no occasion for the law to intervene in every case where . . . feelings are hurt."). "In deciding whether particular conduct rises to an extreme and outrageous level, . . . courts should consider both the conduct's context and the parties' relationship." *Tex. Farm Bureau Mut. Ins. Cos. v. Sears*, 84 S.W.3d 604, 610–11 (Tex. 2002). "[T]he fact that an action is intentional, malicious, or even criminal does not, standing alone, mean that it is extreme or outrageous for purposes of intentional infliction of emotional distress." *Brewerton*, 997 S.W.2d at 215.

The Perrys' IIED claim was based on the following alleged conduct on the part of the board members:

> attempting to financially ruin the Perrys; personally attacking them and their character; publicly shaming them; refusing to provide them with rights to which they are entitled; confronting them regarding [recording an HOA board meeting, an] accommodation[] needed for Mrs. Perry's [hearing] disability; delaying approvals of the Perrys' requests to make modifications to their property; and falsely asserting that the Perrys have not paid their annual HOA assessments . . . .

However, even if we were to assume that the Perrys presented more than a scintilla of evidence to show that the board members engaged in all of these alleged acts, the board members would nevertheless be entitled to summary judgment on the Perry's IIED claim because the alleged acts do not meet the rigorous, exacting standard of

14

extreme or outrageous conduct.[9]  *See Creditwatch*, 157 S.W.3d at 818 (indicating that IIED claims must typically be based on circumstances that border on "serious criminal acts").

Viewed in the context of the Perrys' petition as a whole and the summary-judgment record, it is evident that the allegation at the heart of the Perrys' IIED claim—that the board members "attempt[ed] to financially ruin" them—is based on the board members' decision to direct the HOA to file suit against the Perrys to enforce the CCRs and to charge the Perrys for its legal expenses.  But asserting a legal right in a permissible way is not extreme and outrageous conduct.  *See Zurita v.*

---

[9]The Perrys rely on *MQ Prosper North, LLC v. Coulter*, No. 05-20-00800-CV, 2022 WL 17580198 (Tex. App.—Dallas Dec. 12, 2022, pet. denied) (mem. op.), to support their contention that the board members' alleged conduct was extreme and outrageous, but its facts are distinguishable.  *Coulter* involved a dispute between a homeowner and the owner of a neighboring parcel that the homeowner had to cross in order to enter and exit her property.  *Id.* at *1.  The parties ultimately sued each other, and following a bench trial, the trial court granted the homeowner a judgment for, among other things, IIED.  *Id.* at *3.  The appellate court rejected the appellants' contention that the evidence was legally and factually insufficient to support the appellee's IIED claim because the evidence supported the trial court's findings that MQ Prosper North, LLC's principal had, over a period of two years, "blocked [appellee] from accessing her home; confronted her using obscenities and throwing a letter that struck [appellee] in the face; stopped her from paving her easement, which he also demanded she use; interfered with contractors [appellee] hired to pave the easement; . . . cut [appellee's] water and internet lines; and made disparaging remarks about [appellee] to others."  *Id.* at *9.  Unlike the appellee in *Coulter*, the Perrys do not allege that the board members physically assaulted them, took extreme actions such as cutting their utility lines, or otherwise prevented them from accessing their home; rather, their IIED claim is based primarily on the board members' efforts to enforce the development's CCRs through ordinary means—such as filing a lawsuit.  Thus, the Perrys' reliance on *Coulter* is misplaced.

15

*Lombana*, 322 S.W.3d 463, 474 (Tex. App.—Houston [14th Dist.] 2010, pet. denied) ("Conduct associated with asserting a legal right, such as bringing a lawsuit, cannot be extreme and outrageous."); *Klein & Assocs. Pol. Relations v. Port Arthur Indep. Sch. Dist.*, 92 S.W.3d 889, 898 (Tex. App.—Beaumont 2002, pet. denied) (holding that, as a matter of law, school district's lawsuit did not constitute extreme and outrageous conduct sufficient to support an IIED cause of action even though suit had no merit). Because the HOA is authorized to enforce the CCRs and because the CCRs and the development's enforcement policy authorize the HOA to collect attorney's fees, the HOA was merely asserting its legal rights by suing the Perrys and attempting to collect its attorney's fees. Accordingly, this conduct was neither extreme nor outrageous. *See Zurita*, 322 S.W.3d at 474.

And the other board-member actions alleged by the Perrys, even if true, amount to "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities," not extreme and outrageous conduct.[10] *See Bruce*, 998 S.W.2d at 612. The

---

[10]Although this incident is not specifically referenced in the Perrys' petition, Ms. Perry testified in her deposition and averred in her declaration that one day while she was walking near her house, board member Robert Janson ran a stop sign and "came within inches" of hitting her with his vehicle. But although Ms. Perry could not remember exactly when this incident occurred, the record suggests that it happened well before the inception of the CCR-violation dispute at the heart of this lawsuit. Further, it is unclear from Ms. Perry's testimony whether Janson intentionally ran the stop sign in an attempt to threaten her or was merely driving inattentively. Without more, Ms. Perry's testimony that Janson almost hit her with his vehicle is insufficient to create a fact issue on the extreme-and-outrageous-conduct element of the Perrys' IIED claim.

16

Perrys' allegations that the board members attacked their character, publicly shamed them, and made false statements about them might support a defamation claim, but this behavior is not sufficiently extreme and outrageous to support an IIED claim. *See Salazar v. HEB Grocery Co., LP*, No. 04-16-00734-CV, 2018 WL 1610942, at *5 (Tex. App.—San Antonio Apr. 4, 2018, pet. denied) (mem. op.) (holding that grocery store employee's alleged statements falsely accusing appellant of shoplifting did not rise to the level of extreme and outrageous conduct); *Klein & Assocs. Pol. Relations*, 92 S.W.3d at 898 (holding that school trustees' false public statements about appellant did not constitute extreme and outrageous conduct); *see also Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 699 (Tex. 1994) (clarifying that "behavior is not outrageous simply because it may be tortious"). That certain board members allegedly confronted the Perrys about recording an HOA board meeting—a measure that the Perrys assert was necessary to accommodate Ms. Perry's hearing disability—might be considered rude or insulting, but such conduct does not meet the extreme-and-outrageous standard.[11] *See Bruce*, 998 S.W.2d at 612. Similarly, the Perrys' complaints about the board

---

[11]The Perrys presented no evidence showing that the board members actually knew about Ms. Perry's hearing disability or that this disability was the reason why she was recording the HOA board meeting. Indeed, in his deposition, Mr. Perry acknowledged that the Perrys had never asked the HOA board for any accommodations related to Ms. Perry's hearing disability "because [they] weren't obligated to" do so. In her summary-judgment declaration, Ms. Perry averred that she had told board member Stephen Graham's wife about her hearing disability "while Mr. Graham was within earshot," but there is no evidence that Graham actually heard what she said, much less that he was aware of the reason that she was recording the board meeting.

17

members' alleged failure to timely approve their property-modification requests or to "provide them with their rights" do not rise above the level of "annoyances" or "petty oppressions." *See id.*

In sum, because the Perrys cannot prove at least two elements of their IIED claim, the trial court did not err by granting the board members summary judgment as to that claim. *See Cmty. Mut. Ins. Co. v. Owen*, 804 S.W.2d 602, 604 (Tex. App.—Houston [1st Dist.] 1991, writ denied) ("A defendant who moves for summary judgment assumes the burden of showing, as a matter of law, that [the] plaintiff cannot prove at least one element of its cause of action." (first citing *Citizens First Nat'l Bank v. Cinco Exploration Co.*, 540 S.W.2d 292, 294 (Tex. 1976); and then citing *Rabe v. Guar. Nat'l Ins. Co.*, 787 S.W.2d 575, 577 (Tex. App.—Houston [1st Dist.] 1990, writ denied))). Accordingly, we overrule Appellants' first issue.[12]

## C. Negligence and Gross Negligence

In their second issue, Appellants contend that the trial court erred by granting the board members summary judgment on the Perrys' negligence and gross-negligence claims. They are partially correct: the trial court's summary judgment on

---

[12]Because we conclude that the Perrys cannot prove at least two elements of their IIED claim, we need not address whether the trial court could have properly granted summary judgment on this claim based on statutory immunity. *See* Tex. R. App. P. 47.1; *Bomar Oil and Gas, Inc. v. Loyd*, 381 S.W.3d 689, 694 (Tex. App.—Amarillo 2012, pet. denied).

18

the Perrys' negligence claim was erroneous, but its summary judgment on their gross-negligence claim was proper.

## 1. Negligence

Under Texas law, the elements of a negligence claim are (1) a legal duty; (2) a breach of that duty; and (3) damages proximately caused by the breach. *Elephant Ins. Co., LLC., v. Kenyon*, 644 S.W.3d 137, 144 (Tex. 2022). "To establish proximate cause, it is a plaintiff's burden to prove two elements, cause-in-fact and foreseeability. Cause-in-fact is established when the act or omission was a substantial factor in bringing about the injuries, and without it, the harm would not have occurred." *Hutchison v. Pharris*, 158 S.W.3d 554, 564 (Tex. App.—Fort Worth 2005, no pet.) (citations omitted). "Foreseeability means that an 'actor, as a person of ordinary intelligence, should have anticipated the dangers that his negligent act created for others.'" *Lee Lewis Constr., Inc. v. Harrison*, 70 S.W.3d 778, 785 (Tex. 2001) (quoting *Travis v. City of Mesquite*, 830 S.W.2d 94, 98 (Tex. 1992)).

In their third-party petition, the Perrys alleged that the board members owed them duties to use ordinary care in performing their board functions; when making representations about the Perrys to others; in aiding or protecting them from peril that is under the board members' control; in avoiding a foreseeable risk of injury; and "in performing services, whether gratuitously or for consideration." According to the Perrys, the board members breached these duties by

19

(a) permitting the HOA to inconsistently enforce the CCRs against the Perrys, (b) preventing the HOA from holding a Board meeting pursuant to Texas Property Code Section 209.007, (c) falsely asserting that the Perrys are not paying their annual HOA assessments, (d) issuing invalid delinquent invoices and notices to the Perrys, (e) indicating that the Perrys were in or had filed for bankruptcy, (f) concealing the fact that the HOA had sued the Perrys and the HOA was incurring unwarranted legal fees in violation of Texas Property Code Section 209.0051, (g) engaging in improper accounting of the HOA's finances, (h) improperly spending HOA funds, (i) causing Lakes homeowners (including the Perrys) to incur improper HOA expenses, (j) making false statements regarding the Perrys, including that Mrs. Perry was scaling fences and invading homeowners' privacy, the Perrys are "unstable," and Lakes homeowners are fearful of being near them, and (k) confronting the Perrys regarding accommodations needed for Mrs. Perry's disability.

With regard to damages, the Perrys alleged that the board members' breaches had caused them mental anguish and stress, which had exacerbated their preexisting health conditions. Specifically, they alleged that the board members' negligent actions had caused the symptoms associated with Ms. Perry's preexisting brain tumor to worsen and had caused Mr. Perry to have to go back on blood-pressure medication.

The board members moved for traditional summary judgment on the Perrys' negligence claim on the grounds that (1) it constituted an improper attempt to recover for intentional conduct under a negligence theory and (2) the Perrys could not prove that the board members' negligence had proximately caused the exacerbation of their underlying health conditions because they had failed to timely designate a medical

20

expert.[13]  They also moved for no-evidence summary judgment on the proximate-cause element.  None of these summary-judgment grounds are valid.[14]

### a.  Intentional Conduct Can Support a Negligence Claim

"The fundamental difference between a claim for negligence and an intentional tort is not whether the defendant intended the action, but whether he intended the resulting injury."  *Gavrel v. Lieberman*, No. 2-08-414-CV, 2010 WL 1270334, at *2 (Tex. App.—Fort Worth Apr. 1, 2010, no pet.) (mem. op.) (citing *Reed Tool Co. v. Copelin*,

---

[13]The board members also asserted that, without a physical injury, the Perrys were not legally entitled to mental-anguish damages.  But because we conclude that summary judgment on the Perrys' negligence claim was improper because a fact issue exists as to whether the board members' alleged conduct proximately caused Ms. Perry's medical damages, the resolution of the mental-anguish-damages issue is not necessary to the disposition of this appeal.  Accordingly, we do not address it herein.  *See* Tex. R. App. P. 47.1.

[14]In its sanctions order, the trial court noted that "there is no precedent in Texas law for imposing a duty of ordinary care on volunteer board members of a homeowners' association toward individual homeowners" and that the Perrys had not raised a "good faith argument for the extension, modification[,] or reversal of existing law to impose such a duty."  But because the board members did not challenge the duty element in their summary-judgment motion, we cannot affirm the trial court's summary judgment as to negligence on this basis.  *See FDIC v. Lenk*, 361 S.W.3d 602, 609 (Tex. 2012) ("It is settled that '[a] court cannot grant summary judgment on grounds that were not presented.'" (quoting *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 204 (Tex. 2002))); *Fleming & Assocs., L.L.P. v. Barton*, 425 S.W.3d 560, 572 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) ("[S]ummary judgments must stand or fall on the grounds raised therein . . . ." (citing *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex. 1993))); *see also Wyly v. Integrity Ins. Sols.*, 502 S.W.3d 901, 907 (Tex. App.—Houston [14th Dist.] 2016, no pet.) ("Because these grounds were not raised in the motion for summary judgment, [the defendant] could not raise them for the first time in its reply." (citing *Reliance Ins. Co. v. Hibdon*, 333 S.W.3d 364, 378 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) (op. on reh'g))).

689 S.W.2d 404, 406 (Tex. 1985)). In this context, "[i]ntent generally means that the actor desires to cause the consequences of his act or that he believes the consequences are substantially certain to result from his act." *Id.* As we have previously recognized, a plaintiff may not recast an intentional tort as negligence or recover in negligence when he proves only an intentional tort. *See, e.g., id.*; *Childers v. A.S.*, 909 S.W.2d 282, 291–92 (Tex. App.—Fort Worth 1995, no writ); *Nat'l Union Fire Ins. Co. v. Bourn*, 441 S.W.2d 592, 595 (Tex. App.—Fort Worth 1969, writ ref'd n.r.e.). Nevertheless, intentional conduct may give rise to liability for negligence under certain circumstances, such as when the actor does not exercise reasonable care while performing an intentional act. *See City of Houston v. Roman*, No. 01-15-01042-CV, 2016 WL 3748851, at *3 (Tex. App.—Houston [1st Dist.] July 12, 2016, no pet.) (mem. op.); *see also Baker v. Habeeb*, No. 05-16-01209-CV, 2018 WL 1835566, at *10 (Tex. App.—Dallas Apr. 18, 2018, pet. denied) (mem. op.) (holding that trial court did not err by submitting appellees' negligence claim to the jury even though all of "the property damage was the result of [one of the appellants'] intentional instructions to 'throw out or otherwise carry away and store [appellees'] property'" because there was no evidence that appellants had intended to harm appellees).

Here, although the Perrys' negligence claim is based entirely on intentional conduct, the board members could have performed at least some of the alleged actions—including, for example, permitting the HOA to inconsistently enforce the CCRs and sending the Perrys erroneous notices of CCR violations—without

specifically intending to injure the Perrys. Because the Perrys' negligence claim is based, at least in part, on alleged acts that the board members could have performed without the specific intent to harm the Perrys, it is not—as the board members argued—an intentional tort improperly recast as a negligence claim. *See Gavrel*, 2010 WL 1270334, at *2; *see also Baker*, 2018 WL 1835566, at *10; *Roman*, 2016 WL 3748851, at *3. Thus, the trial court's summary judgment dismissing the Perrys' negligence claim cannot be upheld on that basis.

### b. A Genuine Issue of Material Fact Exists as to Proximate Cause

In their summary-judgment motion, the board members challenged the proximate-cause element of the Perrys' negligence claim on both traditional and no-evidence grounds. Both of these challenges were premised on the Perrys' failure to timely designate an expert witness to testify regarding their medical damages, including the exacerbation of Ms. Perry's brain-tumor symptoms. *See Ins. Co. of N. Am. v. Myers*, 411 S.W.2d 710, 713 (Tex. 1966) (holding that the question of whether "a pre[]existing tumor was activated and the deadly effects of a malignancy accelerated by an injury" is one "of science determinable only from the testimony of expert medical professionals"). But in their summary-judgment response, the Perrys included a declaration from Dr. Alexander Merkler, a board-certified neurologist, stating that "[s]tress, fatigue, and lack of sleep [were] exacerbating/magnifying [Ms. Perry's] neurological symptoms" related to "her brain tumor and essential tremor." And in her own declaration, Ms. Perry averred that the board members' allegedly

negligent conduct had caused the Perrys "incredible stress" and had caused Ms. Perry to suffer, among other things, "loss of sleep" and "fatigue." Viewed in the light most favorable to the Perrys, *see Merriman*, 407 S.W.3d at 248, these two declarations, taken together, are sufficient to create a genuine issue of material fact as to whether the board members' alleged conduct was a substantial factor in bringing about Ms. Perry's injuries, *see Hutchison*, 158 S.W.3d at 564. Thus, to the extent that Dr. Merkler's declaration is part of the summary-judgment proof, the Perrys satisfied their burden to create a fact issue regarding proximate cause. *See Ridgway*, 135 S.W.3d at 600.

Although the board members filed a motion to strike Dr. Merkler's expert-witness designation as untimely, the record does not reflect that the trial court ever ruled on this motion. Nor does the record reflect that the board members ever specifically objected to Dr. Merkler's declaration or that the trial court ruled on any such objection. Even if a party objects to the form of an opponent's summary-judgment evidence, "the evidence 'remains part of the summary[-]judgment proof unless an order sustaining the objection is reduced to writing, signed, and entered of record.'" *Seim v. Allstate Tex. Lloyds*, 551 S.W.3d 161, 164 (Tex. 2018) (quoting *Mitchell v. Baylor Univ. Med. Ctr.*, 109 S.W.3d 838, 842 (Tex. App.—Dallas 2003, no pet.)). Thus, even if Dr. Merkler's designation was untimely, because the board members failed to object to his declaration and obtain a ruling sustaining the objection, his declaration is part of the summary-judgment proof. *See id.*; *Trinh v. Campero*, 372 S.W.3d 741, 745 (Tex. App.—El Paso 2012, no pet.) (holding that expert's

24

affidavit was part of the summary-judgment evidence even though it was undisputed that the expert had been designated after the applicable deadline because the record did not establish that the trial court had ever ruled on the appellee's objection).

Because Dr. Merkler's declaration is part of the summary-judgment proof and because his declaration—when considered together with Ms. Perry's declaration—is sufficient to raise a genuine issue of material fact as to whether the board members' alleged conduct was a substantial factor in bringing about Ms. Perry's injuries, the trial court erred to the extent that it granted summary judgment on the proximate-cause element of the Perrys' negligence claim.

### c. Summary Judgment on Negligence Was Improper

Having determined that the Perrys' negligence claim is not an improperly pleaded intentional-tort claim and that the Perrys satisfied their burden to raise a genuine issue of material fact as to whether the board members' alleged conduct proximately caused their medical damages, we conclude that the trial court erred by granting the board members summary judgment on the Perrys' negligence claim. Therefore, we sustain the Perrys' second issue as it pertains to this claim.

### 2. Gross Negligence

Under Texas law, gross negligence consists of both objective and subjective elements. *See Lee Lewis Constr., Inc.*, 70 S.W.3d at 785. Plaintiffs must prove by clear and convincing evidence that (1) when viewed objectively from the defendant's standpoint at the time of the event, the act or omission involved an extreme degree of

risk, considering the probability and magnitude of the potential harm to others and (2) the defendant had actual, subjective awareness of the risk involved but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others. *See id.*; *see also* Tex. Civ. Prac. & Rem. Code Ann. § 41.001(11); *U-Haul Int'l, Inc. v. Waldrip*, 380 S.W.3d 118, 137 (Tex. 2012). "To establish the first, objective component, the plaintiff must prove that the defendant's conduct made serious injury likely." *Richard v. Wiatt*, No. 14-22-00236-CV, 2023 WL 3071161, at *2 (Tex. App.—Houston [14th Dist.] Apr. 25, 2023, no pet.) (mem. op.) (citing *Boerjan v. Rodriguez*, 436 S.W.3d 307, 311 (Tex. 2014)). "To satisfy the second, subjective component, the plaintiff must prove that the defendant was actually aware of the extreme risk but did not care." *Id.*

In their summary-judgment motion, the board members challenged both elements of the Perrys' gross-negligence claim on no-evidence grounds. Based on our review of the record, we agree that the Perrys failed to present any evidence that the board members' alleged conduct involved an extreme degree of risk, much less that they had actual, subjective awareness of this risk. *See Lee Lewis Constr., Inc.*, 70 S.W.3d at 785. The nature of the board members' alleged conduct—for example, sending erroneous CCR-violation notices and permitting the HOA to inconsistently enforce the CCRs against the Perrys—does not involve a substantial risk of serious injury. Indeed, in their third-party petition, the Perrys did not even allege that the board members' actions involved an extreme degree of risk. At most, the alleged board-

26

member conduct involves a high probability of minor harm, but that is not sufficient to sustain a gross-negligence cause of action. *See Medina v. Zuniga*, 593 S.W.3d 238, 247 (Tex. 2019). Thus, even assuming that the Perrys presented competent summary-judgment evidence showing that the board members did everything that the Perrys alleged that they did, the Perrys nevertheless failed to show the existence of a genuine issue of material fact regarding the elements of their gross-negligence claim. *Cf. Dillard Dept. Stores, Inc. v. Silva*, 148 S.W.3d 370, 374 (Tex. 2004) (holding that appellee who had been wrongfully detained and prosecuted for shoplifting had not presented legally sufficient evidence of gross negligence because although he had "reiterate[d] the circumstances of his detention and [had] complain[ed] that his treatment by [appellant] was extreme and outrageous, there [was] no evidence that such conduct [had] exposed him to an extreme risk of substantial harm").

Accordingly, we conclude that the trial court properly granted the board members summary judgment on the Perrys' gross-negligence claim. Therefore, we overrule the Perrys' second issue as it pertains to this claim.

## D. Sanctions

In their third issue, the Perrys contend that the trial court abused its discretion by awarding the board members sanctions. The trial court's sanctions award was based on its determination that the Perrys' IIED, negligence, and gross-negligence claims were "groundless" and had been "prosecuted and pursued . . . for the improper

purpose of harassment." *See* Tex. R. Civ. P. 13; *see also* Tex. Civ. Prac. & Rem. Code Ann. §§ 10.001–.005.

Given our analysis above and our partial reversal of the trial court's summary judgment as it pertains to the Perrys' negligence claim, we reverse the trial court's sanctions award without addressing its merits and remand the board members' motion for sanctions to the trial court for reconsideration. *See DeGomez v. Haworth*, No. 03-23-00057-CV, 2024 WL 3207505, at *9 (Tex. App.—Austin June 28, 2024, pet. denied) (mem. op. on reh'g) (reversing trial court's post-judgment orders awarding sanctions without regard to their merits and remanding appellee's motions for sanctions to the trial court for reconsideration in light of partial reversal of the trial court's summary judgment); *see also Landry's, Inc. v. Animal Legal Def. Fund*, 631 S.W.3d 40, 55 (Tex. 2021) (stating that resolving sanctions dispute "would be premature" because of disposition on appeal and declining to review sanctions award "at this time, as it is entirely possible our decision would have no effect on the ultimate outcome"); *PR Invs. & Specialty Retailers, Inc. v. State*, 251 S.W.3d 472, 480 (Tex. 2008) (agreeing with court of appeals that award of sanctions should be reversed and remanded for further consideration); *Bruni v. Bruni*, 924 S.W.2d 366, 368–69 (Tex. 1996) (recognizing that judgment on remand "may be significantly different" because trial court had premised judgment on erroneous conclusions of law and remanding award of attorney's fees so that trial court would have "opportunity to reconsider" when rendering judgment on remand); *Guion v. Guion*, 597 S.W.3d 899, 911 (Tex.

28

App.—Houston [1st Dist.] 2020, no pet.) (remanding award of attorney's fees to give trial court opportunity to reassess attorney's fees when it renders new judgment).

## IV. CONCLUSION

In light of the foregoing, we reverse the trial court's summary judgment as to the Perrys' negligence claim and affirm it as to the Perrys' IIED and gross-negligence claims. In addition, we reverse the trial court's sanctions award without addressing its merits and remand the case to the trial court for further proceedings.

/s/ Dana Womack

Dana Womack
Justice

Delivered: February 12, 2026